454

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN D. LINWOOD, Defendant-Appellant.

(No. 73-81;

Third District—July 15, 1975.

Medley A. Tornow, of Peoria, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James O. Christy, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a trial by jury, the defendant, John Linwood, was found guilty of murdering his wife and was sentenced by the circuit court of Peoria County to a term of from 16 to 45 years in the penitentiary.

The defendant, John Linwood, and his wife, Shirley, were married in 1962 and thereafter resided in the Peoria area. According to the defendant, their relations were satisfactory until about 1968. Thereafter, numerous episodes took place involving Shirley's mental problems, rage and marital disharmony. She was hospitalized on at least six occasions for mental disorders at facilities in the Peoria area and was, more or less, continuously under doctors care for several years prior to the incident which resulted in her death.

On November 26, 1971, Shirley was in a rage at about 3:30 in the afternoon. She broke dishes and tried to get out the back window of the apartment. John and Shirley Linwood had both been drinking that day. At about 4 o'clock, John and their daughter, Kathy, went for a ride, ran a couple of errands and at about 6 o'clock John stopped at his mother's house. He called Zeller Zone Clinic from his mother's house and told them that Shirley was enraged. He also called Dr. Cibelli to ask for medicine or something for Shirley. He then went to the police station and asked if they could lock Shirley up for the night. He returned to the apartment at about 7:30. Shirley was seated in a chair next to the record player, listening to records. From about 7:30 to 10:30 John and Shirley and their daughter, Kathy, sat in the apartment drinking beer and listening to records. At about 10:30, Kathy walked Shirley to the bedroom and then left.

During their marriage Shirley had owned several guns. However, all of the guns had been disposed of except one .22 handgun which John bought about 11 months before the trial. This handgun was customarily kept in the trunk of the car or in the bottom drawer of the chest of drawers in the house.

When Kathy left, John, thinking that Shirley might wake up and get the gun out of the bottom drawer of the chest of drawers, went into the bedroom and took the gun out of the drawer to hide it. Then John's sister came in. The gun, which was wrapped in a man's handkerchief when he removed it from the drawer, was lying on the cocktail table.

At about 20 minutes to 12, John went to bed. He took the gun, still wrapped in the handkerchief, into the bedroom and laid it on the night stand. He got a phone call from his son John, Jr. He returned to the bedroom, pulled off his clothes, turned out the light and went to bed. He got in on the side nearest the wall and laid there on his left side facing the wall. He heard a bang and could hear his sister calling him. He got

out of bed and went to the door in his shorts. His sister was yelling what happened, what happened. John turned on the light and Shirley was lying in bed and the gun was in her left hand. He pulled the gun from her left hand and took it to the kitchen. He went back to the bedroom, got dressed and started to go back to bed when he heard someone knocking at the door. It was the police.

The defendant was questioned that night at the apartment, at about 4 a.m. at the police station, at about 4:20 p.m. at the police station and again at 4:30 p.m. the next day at the police station.

Pursuant to an indictment charging him with two counts of murder, defendant was found guilty and has appealed his conviction and sentence.

On this appeal the defendant argues that: (1) statements and admissions were erroneously admitted which deprived him of a fair trial; (2) physical evidence and testimony were erroneously admitted; (3) prejudicial and erroneous statements were made by the State's Attorney in opening and closing argument; (4) the prosecution engaged in unfair and prejudicial cross-examination of defense witnesses; (5) the prosecution elicited and presented improper and unfair evidence from a witness for the State; and, (6) the verdict is not supported by sufficient evidence.

Defendant's first assignment of error, regarding statements and admissions, involves the incidents which took place after the police officers arrived at the scene. The defendant moved to suppress the evidence of his statements or admissions. After a hearing the motion was denied. Defendant renewed his objections to such testimony during trial but again his objections were disallowed.

The initial events were described by Charles Bridgewater, a police officer of the Peoria Police Department. He testified that during the early morning hours of November 27, 1971, around midnight, he responded to a radio call of a possible shooting in the homes at MacArthur and Adams. Upon his arrival, he asked if there had been a shooting at the address, and defendant's sister, who answered the door, said that there had been and that the body was in the bedroom. He then went into the bedroom, viewed the body and then stepped back out of the bedroom and asked the defendant where the weapon was. The defendant told him he had taken the gun from the bedroom and placed it in a cabinet over the sink in the kitchen. The police officer found the handgun in the cabinet above the sink where the defendant had placed it. Officer Bennett followed Bridgewater into the kitchen and stayed there to watch the weapon until sergeants or detectives arrived. The defendant then returned to the living room where he received the *Miranda* warnings. Bridgewater testified as to his conversation with the defendant including his questions to

the defendant and defendant's responses thereto. He also testified it was approximately 5 minutes before Sergeant Taylor arrived.

Sergeant Taylor testified that, after his arrival at the apartment and after his examination of the deceased, he was standing inside the living room and heard the defendant mumble something. He said he looked at the defendant and the defendant looked at him and said, "I hope I get a hundred years." He said he then asked the defendant why, and the defendant said something to the effect that, because I took the gun in there.

With respect to the testimony of Officers Bridgewater and Taylor, it is defendant's contention that the testimony regarding the location of the gun and the reference to "I hope I get a hundred years" as well as the utterance which followed should have been suppressed at the pretrial hearing and should have been excluded during the trial.

The trial court after hearing evidence at the pretrial suppression hearing found in its order that the admonitions required by *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, were not properly given to the defendant until just prior to his statement made on November 28 at 4:30 p.m. However, the trial court also found that the two statements referred to above, made by the defendant in his apartment after Bridgewater and Taylor arrived, were not excluded by the application of the *Miranda* rule. It is this portion of the trial court's order which the defendant claims is erroneous and prejudicial. So far as the record is concerned, it appears undisputed that the statements were made, since they were referred to in defendant's later statement.

It is defendant's theory that both statements are inadmissible under the proper application of the *Miranda* rule unless the warnings and admonitions required by the rule were given to the defendant before the statements were made. Since the court found the admonitions had not been properly given at this time, then it follows, according to defendant, the statements should have been excluded.

In our opinion, we do not believe the application of the *Miranda* rule supports the result which the defendant seeks. When Officer Bridgewater first asked about the gun, we believe it may be fairly inferred from the evidence that Officer Bridgewater did not even know whether a crime had been committed. The defendant was neither under arrest nor believed himself to be under arrest at this time.

■■ The only case referred to by the defendant in support of his argument on this point is *Orozco v. Texas*, 394 U.S. 324, 22 L.Ed.2d 311, 89 S.Ct. 1095, a case significantly dissimilar in its operative facts from those in the instant case. The most obvious difference is that in the instant case

the initial conversation took place at the first stage of an investigation at the scene of a potential criminal offense when the fact of whether any crime had been committed was unknown to the police officer. Another significant distinction is that at this time defendant was not under arrest. The testimony of Bridgewater regarding the location of the gun was not the result of custodial interrogation requiring the prior admonitions of *Miranda* but rather was the general on-the-scene questioning excepted from the application of the giving of *Miranda* admonitions. See *Commonwealth v. Eperjesi*, (1966), 423 Pa. 455, 224 A.2d 216.

With respect to the second statement regarding the "100 years," it is the trial court's conclusion and one which we share that this was a volunteered statement again not the result of any custodial interrogation. Again, volunteered statements are admissible, as indicated in the *Miranda* case, where proper warning and waiver has not occurred. Admissions of these statements was not error.

Defendant also argues the trial court erred in admitting his signed written statement, executed on November 28, 1971. In addition to the investigation which took place at the scene of the offense and the comments made during such investigation, as discussed in the preceding paragraphs, the defendant was questioned later at about 4:30 a.m. on November 27 in the presence of police officers and the State's Attorney. Later on the same date, at about 4:30 p.m., defendant was questioned further and made a signed statement. Again at about 4:30 p.m., on November 28, another written statement was given by defendant.

As a result of the hearing to suppress defendant's statements, the trial court ruled his oral statements made at about 4:30 a.m. on November 27 and his written statement at about 4:30 p.m. on November 27 should be suppressed, and the People took no appeal from this order. However, the trial court ruled the written statement of November 28 should not be suppressed. The basis for the court's ruling was that the first time that defendant was properly advised of his rights and waived the same was just prior to the taking of the written statement on the afternoon of November 28. It appears that warnings may have been given prior to the earlier statements but the trial court believed the evidence to be insufficient to show that defendant had voluntarily and understandably waived the rights about which he had been advised.

■■ Because the earlier statements were suppressed defendant argues the November 28 statement should also have been suppressed, relying principally on *Westover v. United States*, decided with *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602. Unlike the factual situation in *Westover*, where the court held that two interrogations, the first by local police officers and the second by Federal officers, were but

one interrogation because of continuity in time and place, the facts in this case indicate a lapse of time of approximately 24 hours between the taking of the statement admitted and the prior interrogation. Under these circumstances we believe the trial court properly admitted the statement and properly held that the intervening time was sufficient so as to permit the questioning on November 28 to be considered as a separate and distinct transaction unaffected by the prior events.

According to the defendant the trial court erred in admitting portions of the testimony of two witnesses testifying in behalf of the State. Officer Bridgewater testified in part as follows:

"Q. And what did you find there, if anything?
A. Yes, I found a lady in bed, attired in her nightgown, lying in bed with the covers pulled up around her neck.
Q. Where were her arms in relation to the bed covers?
A. They were under the covers."

Pursuant to discovery rules, the defendant had moved for a production order requiring the State to produce memorandums containing substantially verbatim reports of the oral statements of the State's witnesses. The only statement provided to the defendant with respect to testimony of Officer Bridgewater was the police report which contained no reference to the position of the deceased's hands.

■■ Defendant insists that because the pretrial discovery documents furnished him did not include the observations of the witness concerning the blanket, his motion to strike should have been granted. We disagree. The rule (Ill. Rev. Stat. 1971, ch. 110A, par. 412(a)(i)) requires that memoranda of oral statements be furnished defendant. The record fails to show that there were in fact any memoranda of oral statements containing the information to which defendant objects. Nor was any hearing held outside the presence of the jury to determine whether any such written memoranda existed which should have been turned over to the defendant. *In re Forrest*, 12 Ill.App.3d 250, 298 N.E.2d 197.

Defendant complains of certain of the testimony of Officer Fondriest and Mr. Kreiser. However, no objections were made to the testimony during the course of the trial and we do not believe that the errors, if any, constitute plain error authorizing this court to consider the errors on appeal.

Next, defendant argues he was denied a fair trial because of the erroneous admission of certain exhibits. The exhibits complained of are People's exhibit 1, the gun, and People's exhibits 5, 6 and 7, being two pillow slips and a handkerchief in which the gun was wrapped at the time it was found.

■■ The objection to the admission of the gun as an exhibit was based

on defendant's claim the gun was seized as a result of an unlawful interrogation. This issue has been previously disposed of adversely to the claim of defendant. If, as we have previously held in this opinion, the question of location of the gun is not improper, then it follows the admission of the gun as an exhibit was also proper.

With respect to the other exhibits, defendant's contention is that these exhibits were irrelevant and immaterial and hence lacked probative value. We believe the trial court acted properly. There were smudges on the pillow cases and handkerchief supporting the theory of the People as to how the victim's death took place. Even though the inferences from such exhibits were not strong the evidence is not thereby rendered irrelevant as a matter of law.

Defendant has raised other issues which he claims prevented him from having a fair trial. To discuss each of these errors individually would in our opinion unduly lengthen this opinion, and consequently we feel no extended discussion is required. We believe it sufficient to say the rulings of the court were not erroneous. Other events to which no objection was made by defendant did not constitute plain error or permit consideration on appeal.

■■ This brings us to defendant's last contention, namely, the evidence is insufficient to support the finding by the jury that he was guilty of the offense charged. Without detailing all of the testimony, we believe it is sufficient to say that even the defendant concedes there are two major undisputed areas of evidence which, even though circumstantial, are sufficient to support the conviction. The first is that the defendant went into the bedroom with the gun which later caused the victim's death in his possession. Secondly, it is undisputed that only the victim and the defendant were in the bedroom at the time of the victim's death. Whether the victim committed suicide as contended by the defendant or whether the victim was murdered by act of the defendant depends on the resolution of disputed inferences arising from the circumstances as a whole and viewed basically in the context that either the defendant killed his wife or she killed herself. The jury resolved these issues against the defendant, and we are not prepared to say that its decision is so unsatisfactory or improbable that it should be disturbed.

For the foregoing reasons the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

SCOTT and DIXON, JJ., concur.