THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES LEE CLARK, Defendant-Appellant.

First District (5th Division)   No. 76-633

Opinion filed March 25, 1977.

James Geis and Kenneth Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Mary Ellen Dienes, and Wendy Paul Billington, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was found guilty of two counts of murder and sentenced to terms of 40 to 80 years on each count, to be served concurrently. On appeal, he presents the following issues for review: (1) whether the trial court erred in its determination that a 12-year-old witness was competent to testify; (2) whether the rulings on certain evidentiary matters were in error; (3) whether he was denied the

effective assistance of counsel; and (4) whether his guilt was established beyond a reasonable doubt.

Max, Lewis, and Abraham Schuman owned and operated a cleaning, tailoring and fur repairing business located at 7127 South Halsted Street, in Chicago, and they resided on the floor above the shop. On October 18, 1974, at about 6 p.m., Abraham closed the shop by bolting the door and pulling down the shade. His brothers remained as he went upstairs to their living quarters. He had just arrived there when he heard rattling and hollering downstairs and talking in the gangway next to the shop. He ran back to the shop, where he saw Lewis lying near a showcase and Max on the sidewalk in front of the store. The intruders had rifled the drawers and the cash register, which had contained about $200, and they also had attempted to open the safe.

Lewis was dead on arrival at the hospital, and Max died within five to ten minutes of his arrival there. Autopsies were performed, and it was stipulated that the brothers had died as a result of gunshot wounds.

The Schumans' shop was located on the east side of Halsted Street, which runs north and south. The east-west street to the north of the shop is 71st Street and to the south 72nd Street. An alley, which runs parallel to Halsted Street, is located directly behind the shop.

At trial, Andre Smith testified that at approximately 6 p.m., on October 18, 1974, defendant was standing in front of a pool hall located on the southeast corner of 72nd and Halsted Streets, and he saw defendant walk down Halsted Street toward 71st Street about five minutes before he heard shots fired. Stanley Rounds testified that a few minutes before he heard gunfire, he saw an unidentified male knocking on the front door of the Schumans' shop as defendant stood in the gangway to the north of the shop. In response to the knocking, he saw the door open and the two men rush inside. Michael Martin, a 12-year-old who, after a preliminary hearing by the court had been found competent to testify, stated that he heard two shots and saw one of the Schuman brothers come out of the shop and fall to the ground, and then he observed four men—including defendant—exit the shop. As they ran out, he heard defendant say, "No, don't go that way. Go the other way." The four men then ran into the gangway. Delbert Wooten, called as a witness by the court, testified that after hearing gunshots he saw two men emerge from a gangway near the cleaning shop, take approximately 10 steps down an alley in a northerly direction, and then disappear into another gangway. Wooten stated he could not recognize either of the men, as it was dark and he was "high." Martin and Rounds, however, identified defendant as one of the men they had seen running down the alley moments after the shooting.

Each of these witnesses had a prior acquaintanceship with defendant. Martin testified that he had seen defendant four times prior to the incident

and had on one occasion conversed with him for half an hour. On the date of the occurrence, Martin's vantage point gave him a side view of defendant's face and, when the detectives arrived on the scene, he identified defendant by name and described him as walking with a limp and wearing a long brown checked coat, which he had seen defendant wear on a prior occasion, and high heeled shoes. Andre Smith described defendant as wearing a coat the length of which was above the knee. Although Andre knew defendant by name at the time of the occurrence, it wasn't until two months later that he identified defendant as the man he had observed walking toward the cleaners prior to the shootings, and his identification then was in response to police questioning. Rounds described defendant as wearing a tweed maxicoat with a matching wide brimmed hat. However, despite the fact that one of the men he saw run down the alley had a limp similar to that of defendant, he did not positively identify defendant until three hours after the occurrence during questioning at the police station. While Wooten testified that he had not seen defendant on the date in question, a statement he gave the day after the occurrence revealed that he had identified defendant as one of the men he had seen run down the alley subsequent to the sound of gunfire. He testified, however, that he gave this statement only as part of a bargain with police to obtain favorable treatment for himself.

Defendant was arrested the day after the occurrence, and Officer Cushing, one of the arresting officers, testified that defendant was informed that he was under arrest for a murder which had occurred the evening before at 7127 South Halsted Street. Cushing said that although defendant was not told that there was a robbery involved, he asked, "Why do you have me on a pimpy 100 dollar robbery?"

It was stipulated that although fingerprints were taken from the shop, none matched those of defendant.

OPINION

■■ Defendant first contends that the trial court did not conduct an adequate inquiry into the competency of Michael Martin, the 12-year-old State's witness, and that certain of his responses established his incompetency. We disagree. Where a witness has not attained the age of 14, the trial court is required to hold a competency hearing prior to permitting him to testify. (*People v. Sims* (1969), 113 Ill. App. 2d 58, 251 N.E.2d 795.) It must be ascertained whether the "* * * child is sufficiently mature to (1) receive correct impressions from his senses; (2) recollect these impressions; (3) understand questions and narrate answers intelligently; and (4) appreciate the moral duty to tell the truth" (*People v. Broughton* (1976), 35 Ill. App. 3d 619, 625, 342 N.E.2d 100, 104), because the child's level of intelligence rather than his age is determinative of his

competence (*People v. Brown* (1972), 52 Ill. 2d 94, 285 N.E.2d 1; *People v. Ballinger* (1967), 36 Ill. 2d 620, 225 N.E.2d 10, *cert. denied*, 388 U.S. 920, 18 L. Ed. 2d 1366, 87 S. Ct. 2141). The competency of such a witness is a question addressed to the sound discretion of the trial court and, in the absence of an abuse thereof or a manifest misapprehension of a legal principle, its determination will not be disturbed by a court of review. *Brown; Ballinger.*

■■ During the course of his examination by the court and counsel, Michael Martin stated his age and grade level and identified the person with whom he lived and the school he attended. Furthermore, he testified that he understood what it was to tell the truth; that he had sworn to tell the truth; that those who so swear but do not tell the truth go to jail; that the Bible which he read on occasion obliged him to speak the truth; and that by telling a lie, he would hurt himself and his family. Defendant refers us to specific responses made by Martin during his examination and urges that they suggest that he had no inclination to be honest with the court. However, our review of the record of the preliminary hearing satisfies us that Martin understood the questions asked, gave responsive answers and exhibited a suitable degree of intelligence and an indicated awareness of a moral duty to tell the truth. The trial court was in a superior position to observe and evaluate the demeanor of the witness and, in our opinion, there was no abuse of discretion in allowing him to testify. *Ballinger*; see also *People v. Jackson* (1971), 3 Ill. App. 3d 303, 279 N.E.2d 8.

Defendant next contends that he was prejudiced because of three erroneous rulings of the court upon certain evidentiary matters. First, he asserts the court admitted hearsay when it allowed Officer Cushing to testify that neither he nor his partner had informed defendant that he had been arrested for robbery. We cannot agree. In *People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741, hearsay has been defined as:

"[T]estimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter."

However, where the only possible use of the statement goes to the question of whether or not it was made—and not to the truth of the matter expressed therein, it is not hearsay. (*People v. Hannah* (1964), 54 Ill. App. 2d 218, 203 N.E.2d 764.) Utterances offered to show that another had been put on notice are not subject to attack as hearsay. McCormick, Evidence §249, at 589 (2d ed. 1972).

■■ Officer Cushing's statement was offered to show that defendant had not been told that the murders had occurred during a robbery before

defendant said, "Why do you have me on a pimpy 100 dollary robbery?" Furthermore, the statement was made by Cushing after he had testified that he and his partner were together when they drove to the scene of the arrest, when they each showed their identification cards to defendant at the time of the arrest, when they transported him to the station in the same vehicle in which they had arrived, when they brought him to their station office, and that they were still together in the process of making the arrest report when defendant volunteered the above statement. This testimony by Cushing provided foundation for the inference that the officers were in the company of each other from the time they first approached defendant until he made the statement. Thus, Officer Cushing being in a position to have heard any statement his partner may have made which would have placed defendant on notice of the connected robbery, could testify from his own knowledge that no such utterance had been made. In view thereof, we find no reversible error in the admission of Cushing's testimony that neither he nor his partner had informed defendant that the murders occurred during a robbery.

Secondly, defendant asserts error in the admission of Officer Cushing's testimony that defendant said, "Why do you have me on a pimpy 100 dollar robbery?" Evidence is admissible whenever it fairly tends to prove the particular offense charged, and any circumstance may be put in evidence which serves to make the proposition at issue either more or less probable. (*People v. Rodgers* (1972), 53 Ill. 2d 207, 214-15, 290 N.E.2d 251.) While defendant agrees that this is the correct rule of law, he misapprehends its application. In his brief, he says that:

> "The question is, does this alleged statement add anything to the issues at trial. It is not clear what the alleged statement refers to. It may or may not concern other crimes; it may or may not imply that defendant had knowledge of the offense at issue. But even if the inference is that this statement implied some knowledge of this offense, the statement adds nothing to the state's case."

He avoids the question of whether knowledge of an aspect of the offense is probative of one's guilt and subtly redefines the test of relevancy as one of strength. He would have us view the State's case first with and then without the contested piece of evidence and find it relevant only if we find that it strengthens the State's case. This is not the law, however, and we believe that defendant's statement met the test of *Rodgers* and was properly admitted.

■■ Thirdly, defendant asserts that error resulted from the denial of his motion to strike a nonresponsive answer, *i.e.*, when asked to describe the man he had observed in the gangway, Rounds replied, "The defendant." Although we agree with defendant that Rounds's answer was unresponsive to a question seeking a description, we note that defendant

did elicit the description in subsequent questions and, in fact, impeached that description through his witness, Officer Redwell. The response did not foreclose defendant's opportunity to test the credibility of the witness's identification, and we find no prejudice resulting from the denial of the motion to strike the answer. See *People v. Pagan* (1972), 52 Ill. 2d 525, 288 N.E.2d 102.

■■ Defendant also contends that he was convicted as a result of the incompetence of his appointed counsel. Counsel is presumed to be competent whenever a court in good faith appoints a member of the bar in good standing to represent the accused in a criminal proceeding, and this presumption is overcome only by strong and convincing evidence of incompetency. (*People v. Jackson* (1976), 41 Ill. App. 3d 816, 354 N.E.2d 643.) The accused bears the burden of clearly establishing incompetence of counsel in carrying out his duties as trial attorney and that substantial prejudice resulted therefrom, without which the outcome would probably have been different. (*People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83.) Furthermore, the competency of counsel depends upon the particular facts and circumstances of each case (*People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3), which are viewed in their totality from a review of the entire record rather than from a narrow focus upon isolated instances occurring during the course of the trial. *People v. Brown* (1975), 30 Ill. App. 3d 732, 332 N.E.2d 580.

Defendant argues that incompetency of counsel was established from the following conduct or lack thereof: (1) he moved to strike testimony favorable to the defense; (2) he elicited an identification of defendant during his cross-examination of a witness who had made no identification on direct-examination; (3) he failed to cross-examine the State's witnesses as to lighting conditions; and (4) he inadequately examined Michael Martin as to competency prior to his testimony.

A duty is imposed upon the court to see that counsel assigned by it has sufficient ability and experience to fairly represent defendant in the presentation of his defense (*People v. Blevins* (1911), 251 Ill. 381, 96 N.E. 214); however, the basic requirements of due process are not changed. While a client is entitled to a fair trial, his attorney is not expected to be infallible. (*United States ex rel. Weber v. Ragen* (7th Cir. 1949), 176 F.2d 579.) It is only where such legal assistance amounts to no representation at all that the constitutional requirement will demand reversal. (*People v. De Simone* (1956), 9 Ill. 2d 522, 138 N.E.2d 556.) As stated in *People v. Morris* (1954), 3 Ill. 2d 437, 121 N.E.2d 810, each case will have to be judged on its own particular facts as they appear in the context of the proceeding under consideration. It is within the framework of the cited cases that we will examine the alleged failings of counsel here.

■■■ Concerning the first of these, we see that on several occasions during his cross-examination of Andre Smith, counsel moved to strike nonresponsive answers and, after the granting of these motions, he proceeded to effectively question the witness until the desired information was obtained. Only hindsight establishes that the motion to strike in question, coupled with further questioning, was unnecessary as the trial court had ascertained a meaning favorable to the defense from the nonresponsive answer. As the favorable answer was not stricken from the record, we can find no resulting prejudice to defendant. The second of the alleged failings occurred during the testimony of Stanley Rounds, who stated that at the time of the occurrence he could not positively identify the men whom he had seen running down the alley, but that one of them limped in a fashion similar to defendant's gait. While it is true that he did not identify defendant, his testimony regarding the limp corroborated the identification by Martin. By eliciting the identification on cross-examination, counsel brought to the court's attention the fact that although Rounds and defendant were acquaintances prior to the occurrence, he made no reference to defendant's involvement until three hours later while being questioned in the police station. Whether counsel should have been satisfied with attempting to establish actual dissimilarities between the gait of defendant and the man who had limped down the alley, rather than to depict Rounds, because of his delayed identification, as a man who may have fabricated defendant's involvement in an effort to appease officers aware of his probationary status, was a matter of trial tactics, discretion, and judgment which does not serve as a basis for establishing the incompetency of counsel. (*People v. Newell* (1971), 48 Ill. 2d 382, 268 N.E.2d 17.) As to the third alleged failing, we note that although defense counsel did not cross-examine the witnesses who had seen defendant immediately prior to or subsequent to the shootings in regard to the lighting conditions, he did thoroughly cross-examine them upon their view of defendant's face, the vantage point from where they had observed him, the time span between the occurrence and their identification of defendant, the number of men involved in the crime, and their acquaintanceship with defendant. While examination concerning the lighting conditions may have proved valuable, we cannot say that the failure to do so amounted to incompetence. With regard to the fourth charge against counsel, as hereinbefore noted, we believe the preliminary examination of Martin as to his competency was adequate, and we are of the opinion that the lack of further examination does not reflect on counsel's competence. Furthermore, it should be noted he effectively stated the position of defendant—that he could not be connected to the crimes—during his

opening statement, and in closing he made a thorough and highly professional argument, advancing all circumstances which could raise a reasonable doubt of defendant's guilt.

In the light of the foregoing, it is our belief that defendant has not shown that he was prejudiced by failings of his counsel to the extent that the outcome of the trial would have been different had counsel proceeded as defendant now contends he should have. See *Stephany; Morris*.

Lastly, defendant contends that he was not proved guilty beyond a reasonable doubt. We disagree. Where the identification is positive and the witness is credible, the testimony of a single witness is sufficient to support a conviction. (*People v. Miller* (1971), 2 Ill. App. 3d 206, 276 N.E.2d 395.) Furthermore, the testimony of an identification witness is strengthened to the extent of any prior acquaintanceship with the accused. (*People v. Lumpkin* (1975), 28 Ill. App. 3d 710, 329 N.E.2d 262.) The assessment of the credibility of witnesses and the weight to be given their testimony are matters for the determination of the trial judge in a bench trial, and a reviewing court will not substitute its judgment unless the proof is so unsatisfactory as to justify a reasonable doubt regarding the guilt of the accused. (*People v. Tillis* (1976), 40 Ill. App. 3d 66, 351 N.E.2d 332.) Here, Michael Martin testified that he had seen defendant on four previous occasions and on one of these occasions conversed with him for half an hour, and that at the time of the occurrence he observed defendant's profile and limp, heard him speak, and noticed his coat to be one which he had worn on a prior date. Although there were minor discrepancies in their testimony, other witnesses corroborated portions of Martin's testimony and, from our review of the record, we believe the totality of the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.