THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HAROLD WORSHAM, Defendant-Appellant.

First District (4th Division)    No. 78-1328

Opinion filed December 27, 1979.

Leland E. Shalgos, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Following a jury trial, defendant, Harold Worsham, was convicted of aggravated assault (Ill. Rev. Stat. 1977, ch. 38, par. 12—2(a(1)), and he was sentenced to one year probation with the first 20 days to be served in the House of Correction. The issues presented for review by defendant are: (1) whether he was proved guilty beyond a reasonable doubt; and (2) whether the prosecution denied him due process by improperly eliciting the fact that he had remained silent before and after being advised of his constitutional rights.

In addition to aggravated assault, defendant was also charged with unlawful use of weapons and failure to register a firearm. At trial, the complainant Ricardo DuBois testified that on January 25, 1978, about 3:15 p.m., he was driving his automobile away from the Sumner School located in Chicago where he is employed as a Board of Education security officer, when his car was struck from behind by defendant's car. DuBois got out of his car, approached defendant and said, "It looks like we had an accident." Defendant responded, "No, you had an accident" and began abusing DuBois with insulting language. DuBois stated he would call the police and walked away to find a telephone. Defendant followed him and struck him in the face with his fist. DuBois returned the blow and both men began struggling. At this time DuBois identified himself as a police officer by showing his Board of Education badge. DuBois informed defendant of his intention to have him arrested for battery and averted his eyes from defendant momentarily to look for a pencil. When he looked up he noticed that defendant had a gun. Defendant told him to take his hand out of his pockets or he would be shot and further threatened him by pointing the gun at him and cocking

the gun. When defendant looked around at the growing crowd of children, DuBois returned to his automobile in search of a pen and defendant followed him at a distance of 2 feet while still holding the gun.

At that time Miss Greenlaw, a teacher at the school, approached in her automobile and asked DuBois if everything was all right. She supplied him with a pen and paper and he wrote down defendant's license plate number. At this time defendant, who had concealed the gun in his pocket, ordered Greenlaw to move on telling her the matter was none of her concern.

When DuBois approached defendant's car and attempted to read the sticker number, defendant punched him in the eye. DuBois said he picked defendant up and threw him on the trunk of his car. He struggled with defendant in an attempt to prevent him from taking the gun out of his pocket. At that time another security officer, Billy Easterly, and the assistant principal, Eugene Carr, arrived. DuBois testified that while he restrained defendant, Easterly removed the gun from defendant's pocket. The three of them then walked to the school while defendant followed. At this time defendant said that if he could have his gun back he would give them $150.

Both Easterly and Carr corroborated DuBois' statement as to how the gun was taken from defendant as well as the fact that defendant had offered to buy the gun back for $150.

Officer Garfield Eveland testified that upon investigating the incident defendant denied that the gun was his. After being taken to the police station and being advised of his constitutional rights, he was asked if he had a firearm owner's identification card and defendant responded that he did not. On cross-examination the officer testified his report did not contain any reference about defendant's statement that the gun was not his, about *Miranda* warnings being given, or about defendant's statement that he denied having a firearm owner's identification card.

Parish Ghoston, defendant's 10-year-old son, testified he did not see his father have a weapon at the time of the incident. He also testified the driver of the other car had come back to their car while screaming and cursing.

Defendant testified that immediately after the accident took place the complainant came back to his car and started cursing at him. When defendant got out of his car, the complainant stepped back revealing a pistol in his belt. Defendant then grabbed the pistol from the complainant. The complainant told him he was a police officer and showed him some kind of card. Thereafter, when the complainant reached toward him, defendant hit him in the head while still holding the gun.

Defendant said that when he walked away with the gun, the

complainant grabbed him and another struggle then ensued. At this time two other men joined the struggle and took the gun from his pocket. Defendant denied offering to buy the gun from anyone and denied that Eveland had ever asked him about a firearm owner's identification card.

On cross-examination defendant denied speaking to one of the officers that arrested him, and defense counsel objected, arguing that the State was bringing out defendant's silence after being given *Miranda* warnings. The objection was overruled and defendant was then asked about his statement denying that the gun was his.

It was stipulated that if called, Officer Eveland would testify that he did not recall whether or not any State's witnesses told him the defendant offered $150 in return for the gun.

The jury found defendant not guilty of unlawful use of a weapon, not guilty of failure to register as a firearm owner, but guilty of aggravated assault.

OPINION

I

Defendant first contends that the jury's verdicts were inconsistent and led to the conclusion that he was not proved guilty beyond a reasonable doubt. Defendant argues that the only possible explanation of the jury verdicts is that the jury believed the gun in question belonged to the complainant. Defendant asserts that if the jury believed he took the gun from the complainant, it could not have convicted him of aggravated assault because he was merely defending himself from the complainant. ■■ It is well settled that neither logical nor legal consistency of jury verdicts is required in Illinois. (*People v. Dawson* (1975), 60 Ill. 2d 278, 326 N.E.2d 755; *People v. Murray* (1975), 34 Ill. App. 3d 521, 340 N.E.2d 186.) In this case, the jury's verdicts can be explained either by a proper exercise of its "historic power of lenity" or by the inference that it disbelieved the State's witnesses and believed defendant. However, in the latter case, defendant's own testimony indicates that he pointed the gun at complainant and struck him on the head, thus establishing a basis for the verdict. We do not believe that the verdicts were inconsistent, and after reviewing the entire record we find that defendant was proved guilty beyond a reasonable doubt.

II

■■ Defendant also contends that he was deprived of due process when the State brought out before the jury that he had remained silent both before and after being advised of his right to remain silent. A review of the record indicates that defendant did not exercise his right to remain silent but, according to the arresting officer's testimony, denied owning

the weapon in question. Additionally, post-arrest silence can be used against a defendant who testifies to an exculpatory version of events and claims to have told police the same version upon arrest. (*People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39; *People v. Morris* (1979), 79 Ill. App. 3d 318, 398 N.E.2d 38.) We therefore find no merit to defendant's contention.

■■ Moreover, a review of the record indicates that defendant did not file a post-trial motion and has waived this contention. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; Ill. Rev. Stat. 1977, ch. 38, par. 116—1(b).) Although the sentencing hearing at which the post-trial motion might have been argued has been omitted from the record, a reviewing court will indulge every presumption in favor of the judgment when the record is incomplete. *People v. Williams* (1966), 69 Ill. App. 2d 55, 216 N.E.2d 468.

Accordingly, for the reasons set forth, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.