THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY KURENA (Impleaded), Defendant-Appellant.

First District (1st Division)   No. 79-214

Opinion filed August 25, 1980.—Rehearing denied September 22, 1980.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Mark X. VanCura, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Larry Kurena and James Damron were charged by indictment with the murders of John Taylor and Emil Lauridson. After a separate jury trial, Kurena was found guilty of both murders and sentenced to the Illinois Department of Corrections for not less than 200 years nor more than 500 years. Kurena appeals.

On appeal Kurena contends that (1) the jury conducted improper experiments in the jury room during their deliberations; (2) the State violated discovery rules by not tendering statements of two of its witnesses; (3) the State improperly adduced evidence regarding the deceaseds' families; (4) the cross-examination of Brian Kurena regarding his assertion of his fifth amendment right was prejudicial; (5) the evidence adduced regarding lineup identification of defendant and the change in his appearance was prejudicial; (6) the trial court erred in striking evidence of defendant's character and reputation; (7) the trial court erred in refusing to permit defendant to impeach his own witness and refusing to call her as a court's witness; (8) evidence discrediting testimony that the knife was in the possession of defendant was improperly excluded; (9) defendant was denied effective assistance of counsel; (10) the State failed to prove him guilty beyond a reasonable doubt; (11) the prosecution made erroneous comments during closing arguments regarding the presumption of innocence; and (12) he did not make a knowing and intelligent election of the law under which he would be sentenced.

We affirm.

John Taylor and Emil Lauridson were fatally stabbed in the early morning of March 13, 1976. James Hughes, who knew both victims, testified that prior to their deaths the victims had been at a tavern and had assisted Jack Shannon to remove his son John from the premises after John had arrived in a drunken state. Hughes and one of John's brothers carried John into the Shannons' home across the alley from the tavern. After Hughes left the house, he heard Lauridson yell "they got me" and saw Taylor struggling backwards with a knife in his abdomen.

Tim Shannon testified that when he arrived in the alley with his mother, he saw Brian and Larry Kurena near the garage and Jim Damron and Jim Grady across the alley in an empty lot. Kurena and his friends walked across the alley after Taylor told them to leave, but ran back as John was being brought into the house. Tim Shannon observed Damron talking to Lauridson. Damron had his right hand in his pocket and Lauridson asked Damron if he had a gun.

Rosemary Severs testified that she was at a party at Jim Grady's home at 4:30 p.m. on March 12, 1976. At 11:30 p.m., Grady, James Leenheer, defendant, and Severs drove to a tavern looking for marijuana. Defendant entered the tavern and returned five minutes later claiming that someone in the tavern wanted to fight with him. They returned to defendant's home where defendant got a brown-handled butcher knife from the kitchen. She further testified that Leenheer offered to drive her home. Maria Guttierez, Grady, Damron and defendant accompanied them. While in the car, Severs grabbed defendant's arm and defendant told her to be careful because he had a knife in his sleeve. Defendant said he was going back to the tavern to see if the man that wanted to fight was still there.

They parked in a vacant lot near Hi-Low Liquors where they were going to buy beer. Damron, Grady, and defendant walked into the alley behind the lot and ran back to the car a few minutes later. She further stated that defendant said he did not know why he stabbed the two men, that he stabbed his friend Taylor, and that he left a knife in the other man.

Judy Shannon, John Shannon's mother, testified that as John was being taken into the house, she heard Taylor say, "It's all over now. Go away and mind your own business." The only persons remaining in the alley when she left were the victims, defendant, and defendant's brother Brian Kurena.

Maria Pritchett testified that she was at the party at Jim Grady's house and went to defendant's home at about 10:30 p.m. Severs, Larry Kurena, Grady and Damron left approximately two hours later. When they returned Severs, defendant, and others went into the kitchen. When Pritchett entered the kitchen Severs and defendant were arguing and defendant had a knife which resembled People's exhibit no. 6, in his hand. She did not see defendant put the knife down. When they were driving to the tavern Maria heard Severs ask defendant why he had a knife and defendant responded that he needed it for protection.

Police officers Leonard Lawrence, Stanislau Sobie, and Marcus Williams were also called as witnesses by the State. Officer Lawrence testified that he and his partners responded to a call regarding a stabbing in the early morning of March 13, 1976. They observed the bodies of Taylor and Lauridson in an alley and after speaking with Tim Shannon, Lawrence made a radio dispatch naming Larry and Brian Kurena, James Grady and James Damron as persons in the alley immediately before the stabbings. Officer Sobie found a nine-inch butcher knife, which he identified as People's exhibit no. 6, in the alley in a puddle of water. He inventoried the knife and sent it to the crime lab. Officer Williams and his partner apprehended defendant after chasing him 2½ blocks.

Dr. Tae An, a pathologist at the Cook County Medical Examiner's

office, performed autopsies on Taylor and Lauridson. Both Lauridson and Taylor received stab wounds to their left abdomens which Dr. An stated were the causes of death. Although the wounds could have been caused by the butcher knife which was found in the alley, Dr. An could not state for a fact that the butcher knife recovered was the weapon used. Dr. An could not determine from which side the victims were attacked.

Shirley Shannon, John Shannon's wife, testified that at approximately midnight on March 13, 1976, she saw, from the window of her mother-in-law's apartment, her husband being pushed out of the tavern by his father. Brian and Larry Kurena, Damron and Grady were in a prairie across the alley. She later saw Damron and Lauridson near a light pole where Damron, who had previously had his hands in his pockets, punched Lauridson in the chest and abdominal area. Further testimony revealed that Shirley saw Damron's hands, but saw nothing in them.

Jerry Pittman testified that he was at Grady's home on March 12. Several people came to Grady's that evening and were drinking beer. Rosemary Severs was drinking and took two "downers" that evening. She had to be carried out of the house. James Leenheer also testified that Rosemary Severs was carried from Grady's home by Larry Kurena.

Brian Kurena, defendant's brother, testified that he walked to Hi-Low Liquors with Damron after they left Grady's house at approximately midnight. He saw Taylor and Lauridson assaulting John Shannon in the alley behind the liquor store and shortly thereafter, defendant and Grady arrived. Brian refused to leave when Taylor told him to do so and Taylor grabbed him and knocked him to the ground. Damron struck Lauridson and approximately 10 seconds later he saw Taylor and Lauridson lying in the alley bleeding. He had not seen a knife in defendant's possession.

Joseph Kurena, defendant's brother, and Geraldine May, defendant's mother, testified that defendant was left-handed. Joseph further testified that he tried to talk to Rosemary Severs at approximately 12:30 or 1 a.m. on the day in question, but could not understand what she was saying because she was mumbling.

Edward Shalgos, a forensic pathologist who previously was employed by the Cook County Coroner's office, testified that the wounds were "absolutely typical of a right-handed stab." This opinion was consistent with Dr. An's description of the wounds. It assumed a frontal attack. Responding to a hypothetical, Shalgos further testified that a left-handed person could have made similar wounds if the attack had been partially from the rear and to the left of the deceaseds.

Defendant first argues that his right to confrontation and cross-examination rights were violated when the jurors constructed and experimented with a cardboard knife during their deliberations. The affidavits of three jurors and defense counsel's own affidavit regarding his

conversations with three other jurors indicated that the jurors used the knife to determine whether the deceaseds' wounds could have resulted from a right or left-handed stab depending on the position of the parties. They also tried to determine whether the knife could be concealed in a sleeve and whether it could be seen at a distance.

■■ Admittedly, the trier of fact cannot conduct experiments or private investigations which have the effect of producing evidence not introduced at trial. (*People v. Gilbert* (1977), 68 Ill. 2d 252, 369 N.E.2d 849; *People v. Wallenberg* (1962), 24 Ill. 2d 350, 181 N.E.2d 143.) However, we find that the experiments performed by the jurors in this case were conducted within the bounds of evidence produced at trial. The knife found in the alley was admitted into evidence; hence, the jury had a proper model from which to fashion the knife. There was also evidence that defendant hid the knife in his sleeve and that the wounds could have been caused by either a right or left-handed person. We therefore find defendant's contention to be without merit.

Secondly, Kurena argues that the State violated discovery rules by refusing to tender to the defense the statement given by Rosemary Severs to the police and notes taken by the prosecutor during an interview with Maria Guttierez.

The trial court held that the notes taken during the interview with Guttierez constituted the work product of the State's Attorney and therefore were not discoverable. Defendant urges this court to review the notes to determine if they constitute work product. However, these notes are not part of the record before us. Matters not of record will not be considered on review. *People v. Hughes* (1977), 46 Ill. App. 3d 490, 360 N.E.2d 1363; *People v. Greenlee* (1976), 44 Ill. App. 3d 536, 358 N.E.2d 649.

The discovery rule (Ill. Rev. Stat. 1979, ch. 110A, par. 412(a)(i)) requires that memoranda of oral statements be furnished to defendant. However, where defendant alleges that the State failed to produce such statements, the actual existence of the memoranda must be shown. See *People v. Linwood* (1975), 30 Ill. App. 3d 454, 333 N.E.2d 520.

■■ After defendant requested the State to provide a copy of Rosemary Severs' statement, the State replied that it had no copy of it. Furthermore the State furnished Severs' name to defendant in its answer to defendant's pretrial discovery motion and defense counsel admitted that he had not attempted to interview the witness. We therefore find that the State did not violate the discovery rules.

Defendant's third allegation of error concerns the introduction of evidence regarding the victims' families and the prosecutor's references to their families during closing arguments. He argues that the comments served to prejudice and inflame the jury.

References to a victim's family by the prosecution generally have been condemned by the courts because such evidence is irrelevant to the guilt or innocence of the accused and is prejudicial. (*People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436.) However, not all such references entitled defendant to a new trial because under the particular facts of a case, such evidence and arguments may be harmless, particularly when the death penalty is not imposed and the jury does not fix the punishment. *People v. Wilson* (1972), 51 Ill. 2d 302, 281 N.E.2d 626, citing *People v. Jordan* (1967), 38 Ill. 2d 83, 230 N.E.2d 161.

In the instant case, the prosecutor elicited from Cynthia Taylor, daughter of John Taylor, the names and ages of her brothers and sisters. Joanne Conway, Lauridson's sister, stated that Lauridson lived with his parents and two nieces. There was no reference to orphans or children of tenders ages as in *Bernette*, nor did the jury fix defendant's punishment. We therefore find that the introduction of such evidence was harmless error. For the same reasons, we find that the prosecutor's references to the deceaseds' families during closing arguments did not substantially prejudice the accused.

Defendant further argues that he was denied a fair trial where the State cross-examined his brother regarding his brother's post-arrest silence. He argues that the use of the witness' silence as impeachment substantially prejudiced him because the implication of guilt which could be inferred from the witness' silence could be transferred to defendant. In support of his position defendant cites *People v. Godsey* (1978), 74 Ill. 2d 64, 383 N.E.2d 988.

In *Godsey*, the court stated that before a witness may be questioned about his silence, a proper foundation indicating an inconsistency between such silence and the testimony at trial must be laid. Here, the State did not demonstrate any inconsistency between the witness' trial testimony and his silence and the admission of such testimony was therefore error.

However, before such error is a basis for reversal, defendant must show that the error was prejudicial (*People v. Manzella* (1973), 56 Ill. 2d 187, 306 N.E.2d 16) and contributed to his conviction. (*People v. Morehead* (1970), 45 Ill. 2d 326, 259 N.E.2d 8.) It is on this point that *Godsey* is distinguishable. In that case, the court found that where the State treated several separate offenses as projections of one common scheme, it could not determine the prejudicial impact of improper impeachment by silence. Here, we find that defendant was not substantially prejudiced by the evidence of his brother's silence.

We also note that defendant did not object during the State's questioning of Brian Kurena and did not raise the issue in his post-trial motion. He has therefore waived the issue for review. *People v. Pickett*

(1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Worsham* (1979), 79 Ill. App. 3d 1061, 398 N.E.2d 1068.

Defendant also argues that questions propounded by the prosecution to several witnesses regarding their identification of defendant in a lineup and the change of his appearance between the time of his arrest and trial were improper. He argues that this evidence was prejudicial and that he was thereby denied a fair trial.

■■ We first note that the State may elicit testimony regarding a witness' lineup identification of an accused. (*People v. Killebrew* (1973), 55 Ill. 2d 337, 303 N.E.2d 377.) Also, evidence relating to the change in appearance of a defendant is proper when defendant's identification is in issue and his appearance is different at the time of trial. (See *People v. Van Riper* (1970), 127 Ill. App. 2d 394, 262 N.E.2d 141.) We therefore find that the prosecutor did not exceed the bounds of proper examination.

Kurena also contends that the trial court erred in striking the testimony of Stephen Heckman regarding Kurena's reputation as a peaceful and law-abiding citizen. Because this evidence may have impressed the jury, defendant states that he is entitled to a new trial.

We believe that the trial court could have properly admitted the testimony of Heckman. Evidence of community reputation must be based on the witness' association with defendant's neighbors and friends. (*People v. DeMario* (1969), 112 Ill. App. 2d 175, 251 N.E.2d 267, *cert. denied* (1970), 397 U.S. 1057, 25 L. Ed. 2d 675, 90 S. Ct. 1404.) Here, the witness testified that he had known defendant's family for approximately four years and that defendant had a good reputation in the community for truth and veracity.

■■ However, the decision to admit such testimony is within the discretion of the trial judge. (*People v. Emmett* (1975), 34 Ill. App. 3d 167, 340 N.E.2d 235, citing *People v. Willy* (1921), 301 Ill. 307, 133 N.E. 859.) Because the outcome of the trial would not have been different, we find that the error, if any, was harmless error.

Also alleged as error is the trial court's failure to allow defendant to impeach Shirley Shannon, a defense witness, or to call her as a court's witness. During direct examination, Shirley Shannon denied having heard Lauridson say anything after Damron punched him. Defense counsel then attempted to impeach this testimony with her statement to police which indicated that she heard Lauridson say that he had been stabbed after Damron had struck him. Defendant contends that the jury may have arrived at a different result had Shirley Shannon been impeached.

Supreme Court Rule 238 (Ill. Rev. Stat. 1979, ch. 110A, par. 238) provides that a party calling an occurrence witness may impeach the witness by proof of prior inconsistent statements if he is surprised by the witness' testimony. The test of whether a prior statement is sufficiently inconsistent to permit its utilization as impeachment is whether the

statement has a reasonable tendency to discredit the testimony on a material matter. (*People v. Curtis* (1977), 48 Ill. App. 3d 375, 362 N.E.2d 1319.) The ultimate decision as to when cross-examination of the witness on the ground of surprise should be allowed is a matter for the sound discretion of the trial judge (*People v. Wesley* (1959), 18 Ill. 2d 138, 163 N.E.2d 500) as is the decision to call a witness as the court's witness. *People v. Robinson* (1977), 46 Ill. App. 3d 713, 361 N.E.2d 138.

■■ Here, the trial court did not abuse its discretion. The statement in the police report actually enhanced Shannon's testimony and did not tend to discredit it. Also defendant's argument that the jury may have arrived at a different verdict had the additional evidence been admitted is without merit with respect to this issue because, even if the statement were of an impeaching character, it could not be used to prove the truth of the matters asserted therein. *People v. Moses* (1957), 11 Ill. 2d 84, 142 N.E.2d 1.

Defendant also argues that the trial court erred by excluding the testimony of James Leenheer which indicated that two weeks prior to the occurrence, Damron possessed a knife similar to that found in the alley. He argues that this evidence would have discredited the evidence that defendant had the knife on the evening in question.

Generally, any circumstance which tends to make a matter at issue more or less probable may be put into evidence. (*People v. Outlaw* (1978), 67 Ill. App. 3d 327, 384 N.E.2d 898.) With regard to the physical objects used during the commission of an offense, it is not necessary to prove that such object was actually used provided such object was suitable for such use and connected to a person charged with its use. *People v. Moody* (1979), 75 Ill. App. 3d 674, 394 N.E.2d 643.

■■ In view of the above, we find that the trial court could have properly admitted the testimony of Leenheer as it had a direct bearing on whether a person other than defendant committed the murders. Contrary to the ruling of the trial court, the fact that Leenheer could testify only that the knife in Damron's possession resembled the knife found in the alley would not render his testimony inadmissible. Nevertheless, we find that the failure to admit such evidence did not substantially prejudice defendant for there was ample evidence before the jury placing Damron at the scene and in contact with the deceaseds. A different verdict would not necessarily have been reached.

Kurena further alleges that he was denied effective assistance of counsel where defense counsel attempted but failed to introduce the results of the toxicologist's examination of Taylor and Lauridson. Specifically, he argues that counsel's failure to call the toxicologist as a witness or to lay the foundation for admitting the document as a public record was tantamount to ineffective representation.

The accused bears the burden of clearly establishing the

incompetency of counsel. (*People v. Clark* (1977), 47 Ill. App. 3d 624, 365 N.E.2d 20.) He must show that counsel was actually incompetent in carrying out his duties and that he was substantially prejudiced thereby. (*People v. Lewis* (1977), 55 Ill. App. 3d 1022, 371 N.E.2d 672.) Rather than focusing on isolated instances, the totality of counsel's conduct at trial must be considered. *People v. Clark* (1977), 47 Ill. App. 3d 624, 365 N.E.2d 20.

■■ The record indicates that Kurena's trial counsel zealously advocated his client's cause by calling numerous witnesses and conducting thorough direct and cross-examinations. Nor do we find that defendant was substantially prejudiced by the failure to introduce the toxicology reports. The evidence contained therein namely that the deceaseds had high blood alcohol levels, was cumulative of other evidence which indicated that they had been drinking on the evening in question. Because Kurena's counsel's over-all representation during the trial was adequate and because he was not substantially prejudiced by the failure to introduce the reports, we find defendant's contention to be without merit.

Defendant also contends that he was not proved guilty beyond a reasonable doubt. He argues that his conviction rests solely on the testimony of Rosemary Severs and that her testimony is incredible because she had been drinking that evening and had taken drugs. He further contends that there was insufficient evidence linking the alleged murder weapon to Kurena or the offense.

A reviewing court will not reverse the judgment of conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Collins* (1978), 63 Ill. App. 3d 843, 380 N.E.2d 858.) It is within the province of the jury to determine the credibility of the witnesses, and a reviewing court generally will not interfere with that determination. *People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239.

■■ Here, Rosemary Severs, who was with defendant on the evening of the murders, saw defendant with a knife and heard him admit to the stabbings. Maria Pritchett also saw defendant handling a knife similar to that found in the alley. Several of the witnesses also testified to defendant's presence at the scene of the crime. The knife which was found in the alley had blood on the blade. The wounds inflicted on Taylor and Lauridson were consistent with those which would be caused by the knife found on the scene. We therefore find sufficient evidence linking the murder weapon to Kurena and the offense and sufficient evidence corroborating the salient portions of Severs' testimony which supports the verdict of guilt beyond a reasonable doubt.

Kurena also alleges that statements made by the prosecutor during

his closing argument and rebuttal argument constituted plain error. The comments complained of are as follows:

> "You are going to be instructed as to the presumption of innocence, but just remember one thing—the presumption of innocence stands on this conditionally, it's one of the precepts that we work with, but the presumption of innocence is not here to shield somebody that's guilty. It's to protect innocent people. Just keep that in mind in your deliberations, because every bit of evidence that we have put forth, and every bit of evidence that that man put forth on behalf of his client had helped take down that presumption of innocence, break down that presumption, brick by brick until there is no presumption of innocence at this point."

■■ The presumption of innocence exists throughout the entire trial. (*People v. Licata* (1973), 15 Ill. App. 3d 652, 305 N.E.2d 6; *People v. Johnson* (1972), 4 Ill. App. 3d 539, 281 N.E.2d 451.) Therefore, the prosecutor's comment that "there is no presumption of innocence at this point" is clearly erroneous. However, the trial court properly instructed the jury as to the presumption of innocence, and we therefore find that the jury was not misled on this point. *People v. Stokes* (1970), 46 Ill. 2d 325, 263 N.E.2d 21, *cert. denied* (1971), 401 U.S. 946, 28 L. Ed. 2d 229, 91 S. Ct. 965.

Finally, defendant argues that he did not make a knowing and intelligent election of the law under which he would be sentenced. As evidence of this fact, he cites the trial court's failure to personally address him and advise him of his options or to ask defense counsel if he had conferred with his client.

■■ While it is advisable to inform defendant of his right to elect the law under which he would be sentenced (see *People v. Peoples* (1979), 71 Ill. App. 3d 842, 390 N.E.2d 554), the trial court's failure to do so in the case at bar did not render defendant's election invalid. He was represented by counsel and there is no indication that defendant did not understand his options. Nor does his choice of sentencing create serious doubts as to validity of his choice for he chose the law with the lesser minimum sentence. Furthermore, the sentence imposed was within that mandated by both laws. See *People v. Jones* (1980), 81 Ill. App. 3d 798, 401 N.E.2d 1054.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

GOLDBERG, P. J., and CAMPBELL, J., concur.