Larry KURINA,[1] Petitioner–Appellant,

v.

James THIERET, Warden, Menard
Correctional Institution,
Respondent–Appellee.

No. 87–1458.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1987.

Decided Aug. 3, 1988.

---

**1.** Petitioner's name has been misspelled at various times during the course of the proceedings in the state courts. We use the correct spelling although that spelling may differ from some of the reported cases in which petitioner's name is spelled "Kurena."

Julius L. Echeles, Chicago, Ill., for petitioner-appellant.

Scott Graham, Illinois Atty. Gen. Office, Chicago, Ill., for respondent-appellee.

Before POSNER, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Petitioner-appellant Larry Kurina appeals from the district court's dismissal of his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. The district court dismissed Kurina's petition after considering seven of the eight grounds raised in the petition on their merits and finding that one ground had been waived. We affirm the district court's decision.

### A.

On March 13, 1976, John Taylor and Emil Lauridson were fatally stabbed in an alley behind a neighborhood tavern in the city of Chicago. Kurina, Kurina's brother Brian, and several of Kurina's friends were the only individuals besides the victims in the alley at the time of the stabbing. Both Kurina and his friend Jim Damron were charged with two counts of murder. Kurina was tried and convicted in the Circuit Court of Cook County, Illinois.

The prosecution's chief witness, Rosemary Severs, testified that she was with Kurina and his friends on the evening of the murders. Severs testified that she saw Kurina leave his home earlier that evening with a knife which she later testified closely resembled the murder weapon. The en-

tire group went to the Hi–Low Tavern. Shortly after their arrival, a fight took place in the alley behind the tavern. At the time of the fight, Severs was waiting for Kurina in his car. Severs testified that after going into the alley, Kurina ran to the car and said that he had just stabbed two men, that he did not know why he had done it, and that he had left the knife in one man's belly. Though a portion of Severs' testimony was corroborated by other witnesses, she alone saw Kurina with a knife and heard Kurina's confession. At trial, Severs admitted she had been drinking beer on the evening of the stabbings and that she had also taken a "downer."

Of those present in the alley at the time of the stabbing, only Kurina's brother Brian testified on Kurina's behalf. Brian did not see who stabbed Taylor and Lauridson nor did he see his brother or Damron with the murder weapon that night.

Because Severs' testimony was the only evidence directly linking Kurina to the crime, Kurina's attorney spent a good portion of the defense case attempting to discredit Severs. Kurina also attempted to show that a right-handed assailant had stabbed Taylor and Lauridson. It was established that Kurina is left-handed. In addition, Kurina called Dr. Shalgos, a forensic pathologist, to testify that the victims' wounds were consistent with an attack by a right-handed person.

The jury found Kurina guilty of both counts of murder and Kurina was sentenced to prison for 200–500 years.

Kurina raised three issues on direct appeal from his conviction, none of which was successful. The Illinois appellate court affirmed Kurina's conviction in *People v. Kurena*, 87 Ill.App.3d 771, 43 Ill.Dec. 277, 410 N.E.2d 277 (1st Dist.1980). Leave to appeal from the state appellate court's decision was denied.

Kurina then sought relief under the Illinois Post–Conviction Hearing Act, Ill.Rev. Stat. Ch. 38, ¶ 122–1 to 122–7. In that petition, Kurina raised five issues not previously raised on direct appeal.[2] The peti-

tion for post-conviction relief was denied by the trial court and affirmed by the Illinois appellate court in an unpublished opinion. The Illinois Supreme Court denied leave to appeal.

Kurina then filed a petition for writ of habeas corpus with the federal district court. The district court dismissed Kurina's petition for a writ of habeas corpus, 659 F.Supp. 1165, and this appeal followed.

### B.

Kurina presented eight reasons why a writ of habeas corpus should issue. Kurina argued that:

(1) he was denied his right to confrontation when the jury improperly experimented with a replica of the murder weapon during their deliberations;

(2) he was denied due process when the prosecution questioned his brother, Brian, on Brian's post-arrest silence;

(3) he was denied due process when the court improperly interjected itself into the questioning of two defense witnesses;

(4) he was denied due process when the court prevented him from presenting exculpatory evidence of a co-defendant's confession to the murders;

(5) his 5th Amendment rights were violated when the prosecution repeatedly referred to the "undenied and uncontradicted" testimony during closing arguments—implicating Kurina's right to silence;

(6) he was denied due process when the prosecution mischaracterized the presumption of innocence during closing arguments;

(7) he was denied effective assistance of counsel on appeal since counsel failed to raise the issues of the court's questioning, the exculpatory confession, and the prosecution's comments, on direct appeal; and finally,

(8) the combined effect of grounds 1 through 6, deprived him of due process.

---

**2.** The issues raised in the petition for post-conviction relief eventually resurfaced in Kurina's petition for habeas relief filed in the federal district court.

Of the eight issues raised, three, issues (1), (2) and (6), previously had been raised in Kurina's direct appeal. Issues (3), (4), (5), and (7) had been raised in Kurina's petition for post-conviction relief. Only issue (8), a catch-all claim, was first raised in the petition for habeas relief.

On February 17, 1987, the district court issued an order denying Kurina's petition for a writ of habeas corpus. The district court found that although Kurina had exhausted all available state remedies before filing his petition for habeas corpus, he failed to raise four of the eight arguments contained in his habeas petition on direct appeal from his conviction. Depending on whether Illinois state courts had dismissed Kurina's post-conviction claims because he failed to raise them on direct appeal, the district court ruled it too was constrained to dismiss those claims on the grounds of waiver.

After examining the record, the district court found that the Illinois trial and appellate courts had actually considered three of the four issues first raised in the post-conviction petition on their merits. Thus, Kurina was entitled to raise those three issues in his petition for a writ of habeas corpus. As to the remaining claim, the district court found that the Illinois appellate court had noted that Kurina failed to raise it either in a post-trial motion or on direct appeal. However, the Illinois appellate court also considered that claim on its merits. The federal district court held that where a state court dismisses a claim for post-conviction relief on the dual grounds of waiver and on its merits, a petitioner must show cause and prejudice before that claim may be renewed in a petition for habeas corpus. Since Kurina failed to show either cause or prejudice, the district court found that Kurina waived his right to raise that issue in the federal district court.

The district court then reviewed each of Kurina's seven remaining claims on their merits, finding that the majority of those contentions were without substance or that if they had substantive merit, that Kurina had not been prejudiced at trial.

## C.

We now review the district court's disposition of Kurina's eight claims. We note initially that because Kurina raised issues (1), (2), and (6) on direct appeal from his conviction, he preserved them. The district court, therefore, properly considered those claims on their merits.

We also find that the court properly considered issues (4), (5), and (7), first raised in Kurina's post-conviction petition for relief. Failure to object at trial or to raise an issue on a direct appeal from a conviction generally precludes an Illinois state court from considering an issue first raised in a post-conviction petition on its merits. *United States ex rel. Villa v. Fairman,* 810 F.2d 715 (7th Cir.1987); *Cartee v. Nix,* 803 F.2d 296 (7th Cir.1986); *Goins v. People,* 103 Ill.App.3d 596, 59 Ill.Dec. 312, 431 N.E.2d 1069 (1st Dist. 1981). Further, a claim which has been deemed waived under Illinois law may not be considered for the first time in a federal habeas corpus proceeding unless the petitioner can show both cause for the procedural default and actual prejudice. *Sotelo v. Indiana State Prison, et al.,* 850 F.2d 1244, 1252 (7th Cir.1988) (similar discussion of waiver in the context of Indiana state law); *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354, 361 (7th Cir.1983). However, where a state court rules on the merits of a constitutional claim first raised in a post-conviction petition, but does not rule "on the state procedural issue regarding waiver," the federal court may review that claim in a federal habeas corpus proceeding. *Goins v. Lane,* 787 F.2d 248, 251 (7th Cir.1986); *Farmer v. Prast,* 721 F.2d 602, 605, n. 2 (7th Cir.1983). In this case, the Illinois appellate court considered the merits of arguments (4), (5), and (7) first raised in Kurina's petition for post-conviction relief. Thus, Kurina was not required to show cause and prejudice before raising those issues in the district court and the court correctly found that Kurina had not waived claims (4), (5), and (7).

With respect to ground (3), involving the allegedly improper cross-examina-

tion of Kurina's brother, the state appellate court dismissed that claim on its merits as well as on the grounds of waiver. As the district court properly found, where a cause is dismissed on the dual grounds of waiver and on the merits, a petitioner must show cause and prejudice to raise that issue on habeas corpus review. In *Goins* we said,

> ... federal habeas-corpus relief is precluded if the state appellate court affirms a state trial court decision on the 'twin grounds' of (1) lack of merit for the constitutional claim and (2) the petitioner's failure without justification, to comply with a state procedural rule unless, of course, the petitioner demonstrates in federal court cause and prejudice for the procedural default.

787 F.2d at 251.

By alleging, as ground (7) of his habeas petition, that he was denied effective assistance of counsel at the state appellate level, Kurina argued that he has shown "cause and prejudice" for his procedural default in state court. In other words, Kurina's failure to raise the issue of Brian's cross-examination on direct appeal was excusable because it was the direct result of the ineffective assistance of counsel on appeal.

The Supreme Court considered a similar argument in the context of a federal habeas proceeding. In *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), the Supreme Court held "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." The Court went on to hold:

> So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under ... *Strickland v. Washington* ... we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.

477 U.S. at 488, 106 S.Ct. at 2645–46.

Thus, even if Kurina's counsel inadvertently failed to raise the issue of Brian's cross-examination on appeal or chose not to raise that issue for tactical reasons, such a failure will not cure Kurina's procedural default in state court absent evidence that counsel's representation fell below an objective standard of reasonableness and that Kurina's defense was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

We agree with the district court that no such evidence exists. Thus, Kurina waived issue (3) by failing to show cause and prejudice.

### D.

We now consider the merits of the individual remaining claims, reviewed by the district court.

### (1)

Kurina alleged first that he was denied his sixth amendment right to confrontation when the jury conducted experiments with a cardboard replica of the murder weapon during their deliberations. As part of his defense, Kurina presented evidence that the murder victims had been stabbed by a right-handed assailant and that he was left-handed. Kurina's counsel learned, after judgment had been entered, that the jury constructed a cardboard knife to ascertain whether the wounds could have been inflicted by a left-handed person and whether the knife could have been concealed.

Kurina argued the jury's experiments constituted "extrinsic evidence." The district court ruled that if the actual knife, introduced into evidence at trial, had been sent to the jury room, the jury would have been free to experiment with "actual" evidence. Prudently, however, the jury chose to conduct their experiments with a cardboard knife. The district court found that the jury was entitled to evaluate evidence introduced at trial using experiments based on their "common experiences and illustrations." The jury did not use extrinsic evidence to conduct its experiments.

On appeal, Kurina claims the district court's reasoning is flawed because the weight of the replica was not equivalent to

the weight of the knife admitted into evidence and therefore, experiments to determine whether the wounds could have been inflicted by a left-handed person were also flawed.

We can make short shrift of Kurina's argument. In *United States v. Hephner*, 410 F.2d 930, 936 (7th Cir.1969) this court held that "[j]urors must be given enough latitude in their deliberations to permit them to use common experience and illustrations in reaching their verdict." A simple experiment based solely on evidence introduced at trial was not prejudicial to Kurina. Kurina's defense was that a left-handed assailant could not have stabbed the murder victims. The jury was free to evaluate that defense based on the evidence introduced at trial—including the murder weapon. *See United States v. Avery*, 717 F.2d 1020, 1026 (6th Cir.1983). Although a defendant has the right to be confronted with all the evidence against him and although that right may be interfered with when the jury conducts experiments based on information obtained outside of the trial court (*see Farese v. United States*, 428 F.2d 178 (5th Cir.1970)), no such experiments took place here.

**(2)**

Kurina next argues that he was deprived of his fifth amendment right to due process when the district court improperly examined two defense witnesses. According to Kurina, the court's questions reflected a bias toward those witnesses. The district court ruled that the trial judge's questions were designed to clarify the bases for the witnesses' assertions and, as such, left the factual and credibility determinations to the jury.

We agree. Doctor Shalgos, Kurina's expert witness, testified based on a lengthy hypothetical question. The court questioned Dr. Shalgos about the assumptions underlying his testimony in response to that hypothetical question. The court's questions merely served to clarify Dr. Shalgos' response.[3] Although Dr. Shalgos' answers to the court's questions may not have favored Kurina's defense, the court's questions were not unfavorably biased toward the defendant's witnesses.[4]

The district court also questioned defense witness James Leenheer. Part of Kurina's defense was aimed at impeaching Rosemary Severs, the prosecution's chief

---

**3.** The colloquy between Dr. Shalgos and the court was as follows:

THE WITNESS: As I indicated before, the character of the stab wounds and the tracks in the body are absolutely typical of a right-handed stab with a frontal or near-frontal approach.

MR. HOENIG: All right.

THE COURT: Doctor, I'd like to ask a question.

THE WITNESS: Yes.

THE COURT: For the Court's information, and so forth, could a left-handed person wielding a knife with the right hand have submitted the same type of stab wound, assuming the same position as you indicated, a frontal position?

THE WITNESS: Theoretically, the answer is yes, I must qualify my 'theoretically.'

MR. GOGGIN: Judge, I'm going to object to this, to all of this qualification.

THE COURT: The objection is overruled.

MR. GOGGIN: With all due respect—

THE COURT: Objection overruled.

THE WITNESS: An individual who is left-handed does not have the ease, the familiarity in grasping something with his right hand, and in grasping, insofar as both of these stabbings are concerned, indications are absolutely one hundred percent that the position of the knife in the hand of the stabbing individual has not changed, not shifted at all.

Now, when you have a right-handed individual who has surety in his grasp, who is accustomed to it, that knife can stay.

THE COURT: But in the same vein, Doctor, is it not a fact, or isn't it possible for a left-handed individual with a right hand moving fast enough, or very ambidextrous, as such, inflict the same type of wound?

THE WITNESS: He can inflict the same type of wound effects, but the position of the wound indicates that the knife has not shifted in the hand of the individual.

THE COURT: I understand that, Doctor, and also with the assumption that this is a frontal or direct frontal attack, as contrasted to a side or rear attack, is that correct?

THE WITNESS: Yes.

(Trial Transcript, pp. 756–57).

**4.** Kurina relies on *United States v. Spears*, 558 F.2d 1296 (7th Cir.1977), in support of the argument that the court interjected itself impermissibly. In *Spears*, we reversed the defendant's conviction finding the trial court had so thoroughly castigated defense counsel in front of the jury that counsel became an ineffective spokesman for the defendant. In this case, the court simply clarified a witness' responses.

witness. Leenheer was called to discredit Severs through testimony that Severs was "high" on the night of the stabbings. The court questioned Leenheer about the basis for his opinion that Severs was high only to discover the witness had no basis for that opinion.[5] In our view, the trial judge's questioning in this case, was not so one-sided or prejudicial that it constituted a denial of due process. In appropriate situations, such questioning may be essential to the fact-finding function of the jury.

### (3)

■ Kurina also claims the trial court improperly prohibited him from presenting evidence of a co-defendant's confession thereby depriving him of his constitutional right to due process. Kurina attempted to call David Latronica to the stand to testify that James Damron, Kurina's co-defendant and Latronica's jail cell-mate, had confessed to the murders. The trial court refused to admit Latronica's hearsay evidence but offered to make Damron a court witness.

In reviewing this claim, the district court concluded, and we wholeheartedly agree, that "Kurena [sic] can hardly claim preju-

dice because of the exclusionary ruling when *the declarant* himself *was made available to Kurena* [sic] *as a witness."*

### (4)

■ The next issue raised in Kurina's habeas petition concerns the prosecutor's repeated allusions to Kurina's decision to remain silent at trial, in derogation of Kurina's fifth amendment right against self-incrimination. It is undisputed that the prosecutor referred to the state's "undenied" and "uncontradicted" evidence several times in the course of closing arguments—references the district court found were problematic. The district court held that references to the "uncontradicted" evidence required a review of the record to ascertain "whether that characterization necessarily points to the defendant not taking the stand." In other words, if the defendant was the only one who could have contradicted the evidence, the jury might have construed a reference to the uncontradicted testimony as a reference to defendant's silence.

5. THE COURT: You said she was high. What do you mean by that? What do you mean by high?

THE WITNESS: That she might have been on drugs.

THE COURT: Do you know for a fact that she was taking any drugs at that particular time?

THE WITNESS: No, but her eyes, from her eyes, from her eyes, the appearance of her eyes.

THE COURT: What do you base your opinion on the fact that she was taking drugs?

THE WITNESS: Well, only from the way her eyes looked, bloodshot.

THE COURT: I understand. But have you ever seen anybody taking drugs prior to this time and know what they look like?

THE WITNESS: I have, Your Honor.

THE COURT: What?

THE WITNESS: I have.

THE COURT: You have seen?

THE WITNESS: I have myself.

THE COURT: You have, yourself, taken drugs?

THE WITNESS: Yes.

THE COURT: And you know what they look like?

THE WITNESS: Well, I know what I look like.

THE COURT: And on that basis everybody that takes drugs looks the same?

THE WITNESS: No, I just assumed.

THE COURT: I see. You assumed but you didn't know whether or not she was taking drugs?

THE WITNESS: No, I—

MR. KANE: Judge, I would ask that all that testimony be stricken.

THE COURT: All right. It shall be stricken as being unresponsive. There is no basis for it. It's a conclusion. Thank you. The jury is instructed to disregard that statement.

MR. HOENIG: Had you ever seen other people under the influence of drugs?

MR. KANE: Again, I will object.

THE COURT: Objection sustained. The Court has asked him that question and he has answered that he has not. He just based his opinion on the appearance of what he would look like.

MR. HOENIG: Have you ever observed other people under the influence of intoxicating liquor.

THE WITNESS: I have.

THE COURT: And how many have you seen?

THE WITNESS: Quite a bit.

THE COURT: In your lifetime?

THE WITNESS: Quite a bit.

THE COURT: Quite a bit? What would you describe the physical condition of Rosemary Sims at that time?

THE WITNESS: As being drugged.

In *United States ex rel. Burke v. Greer*, 756 F.2d 1295, 1300 (7th Cir.1985), we said:

> Indirect references to the defendant's failure to testify are constitutionally impermissible if 'the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify.' [Citations omitted.]

Nevertheless, not all comments regarding the weight of the evidence are constitutionally impermissible. *See United States v. Sblendorio*, 830 F.2d 1382 (7th Cir.1987). "[U]nless the prosecutor's comment uses the defendant's privilege as evidence against him, it is not objectionable." *Id.* at 1391–92. Our holding in *Sblendorio* indicates that a prosecutor may comment on the "uncontradicted" or "uncontroverted" evidence since the absence of contradiction has evidentiary value, no matter who the logical person to furnish the contradiction.[6]

In this case, the prosecutor's references to the "uncontradicted" evidence related primarily to portions of Rosemary Severs' testimony. The district court analyzed that testimony carefully and found that Severs' testimony could have been contradicted by several of Kurina's witnesses. However, unfortunately for Kurina, his own witnesses often corroborated Severs' testimony and indeed, her testimony remained uncontradicted.

We have never held that references to uncontroverted evidence which could have been controverted by someone other than the defendant will constitute reversible error. *See United States v. Poole*, 379 F.2d 645, 649 (7th Cir.1967). Even under *Burke*, reference to "uncontradicted" testimony (which could have been contradicted by witnesses other than Kurina), does not constitute reversible error. The prosecutor's references did not deprive Kurina of a fair trial.

### (5)

Kurina also attacks another remark made by the prosecutor during the state's closing argument. On rebuttal to defendant's closing argument, the prosecutor argued:

> You are going to be instructed as to the presumption of innocence, but just remember one thing—the presumption of innocence stands on this conditionally, it's one of the precepts that we work with, but the presumption of innocence is not here to shield somebody that's guilty. It's to protect innocent people. Just keep that in mind in your deliberations, because every bit of evidence we have put forth and every bit of evidence that man put forth on behalf of his client has helped take down that presumption of innocence, break down that presumption brick by brick until there is no presumption of innocence at this point.

As the district court noted, on direct appeal from Kurina's conviction, the Illinois

---

(Trial Transcript, pp. 560–62).

**6.** The Supreme Court held in *United States v. Robinson*, —— U.S. ——, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988) that the prosecutor's statement to the jury that the defendant could have explained himself during the trial did not violate the rule in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). In *Robinson*, the Court said:

> The Court of Appeals and respondent apparently take the view that any "direct" reference by the prosecutor to the failure of the defendant to testify violates the Fifth Amendment as construed in *Griffin*. We decline to give *Griffin* such a broad reading, because we think such a reading would be quite inconsistent with the Fifth Amendment, which protects against compulsory self-incrimination. The *Griffin* court addressed prosecutorial comment which boldly stated to the jury that the

defendant must have known what the disputed facts were, but that he had refused to take the stand to deny or explain them.... In the present case it is evident that the prosecutorial comment did not treat the defendant's silence as substantive evidence of guilt.... Where the prosecutor on his own initiative asks the jury to draw an adverse inference from the defendant's silence, *Griffin* holds that the privilege against compulsory self-incrimination is violated.

108 S.Ct. at 868–69. Our case does not involve a prosecutorial request for an adverse inference. Although the interpretation of *Robinson* is complicated by the fact that the prosecutor was replying to a comment by defense counsel opening the subject, the Supreme Court's treatment of *Griffin* as an adverse inference case appears to contradict our much broader reading in *Burke*.

appellate court ruled that the prosecutor's remarks were clearly erroneous (*Kurena*, 87 Ill.App.3d at 781, 43 Ill.Dec. at 286, 410 N.E.2d at 286) but that Kurina suffered no prejudice as a result of those comments. The district court found that the trial court correctly instructed the jury on the presumption of innocence shortly after the remarks were made. Moreover, the prosecutor made his remarks in response to defense counsel's equally erroneous comments. Given the totality of circumstances surrounding Kurina's trial, the district court found that Kurina had not been prejudiced.

We agree with the district court. Kurina's defense was not substantially prejudiced by the prosecutor's remarks.

> The heart of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial when viewed in its entirety, not the culpability of the prosecutor.... The appropriate inquiry, therefore, is not whether the prosecutor's conduct is conduct which "is undesirable, erroneous or even 'universally condemned,' but [whether] it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)....

*United States ex rel. Crist v. Lane*, 745 F.2d 476, 482 (7th Cir.1984). Thus, in reviewing a claim that the prosecutor's closing remarks unduly prejudiced the defendant, we focus on "the probable effect of the prosecutor's response would have on the jury's ability to judge the evidence fairly." We agree with the district court's assessment that any effect the prosecutor's comments may have had on the jury's ability to weigh the evidence fairly was negated by the trial court's instruction on the presumption of innocence. Kurina was not unduly prejudiced by the prosecutor's remarks.

### (6)

█ We have already discussed Kurina's next contention in our discussion of waiver. Kurina alleges he was denied effective assistance of counsel on the direct appeal from his conviction because counsel failed to raise three issues. Kurina conveniently overlooks the fact that he was not prejudiced by counsel's failure to raise those issues because those issues were considered on their merits by both the Illinois state courts and the district court.

Moreover, when a claim of ineffective assistance of counsel is based on counsel's failure to raise certain issues on appeal, the court must determine:

> Whether appellate counsel failed to present significant and obvious issues on appeal.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). The issues Kurina's counsel allegedly failed to raise are that the judge improperly involved himself in the questioning, that the hearsay confession of Kurina's co-defendant was improperly excluded and the prosecutor's comments were improper. As evidenced by our discussion of each of those contentions, appellate counsel may reasonably have chosen not to raise those issues since those issues did not appear to be particularly meritorious. Moreover, as the district court found, counsel may have believed two of the above three issues were waived because of a failure to object at trial.

On the whole, we do not believe appellate counsel's actions were unreasonable or constituted ineffective assistance of counsel under the *Strickland* standard.

### (7)

█ As a final matter, Kurina argues the combined effect of the constitutional violations discussed in parts 1–6 was to deprive him of due process. However, because we have upheld the district court's findings that none of Kurina's claims resulted in a prejudice to Kurina, the combined effect of those claims can not violate due process.

The district court's order dismissing Kurina's entire petition for habeas corpus is AFFIRMED.