**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0783n.06

**No. 08-1240**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MICHAEL JOHN FLETCHER, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KENNETH T. MCKEE, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

FILED
**Dec 11, 2009**
LEONARD GREEN, Clerk

Before: MARTIN and ROGERS, Circuit Judges; REEVES, District Judge.[*]

REEVES, District Judge. Petitioner Michael Fletcher was convicted of second-degree murder in the shooting death of his wife, Leann, and was sentenced to life in prison. Several months after the trial ended, ten of the twelve jurors were interviewed on a national television broadcast. The interviews revealed that, during deliberations, the jurors had conducted an experiment in the jury room to determine where the gun would have fallen if Leann had accidentally shot herself as the defense had claimed. Fletcher argues that this experiment resulted in the creation of extrinsic evidence that constituted an extraneous influence on the jury, thus violating his Sixth Amendment rights to be present during critical stages of trial, to the assistance of counsel, and to confrontation. The district court denied habeas relief because it concluded that the experiment did not subject the

---

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

jury to an extraneous influence and that the state court's decision on this issue did not warrant granting the writ under the applicable standard.

We find that the district court correctly concluded that the jury room reenactment using trial exhibits and testimony was part of the jury's private, internal deliberations and did not violate Fletcher's Sixth Amendment rights. Further, the state court's ruling on this issue does not conflict with clearly established federal law such that habeas relief would be appropriate.

**I.**

Fletcher's pregnant wife, Leann, was shot to death on August 16, 1999, at their home. Fletcher was the only other person present at the time of Leann's death. He maintained that Leann accidently shot herself while attempting to reload the gun. Earlier that afternoon, Fletcher had taken Leann to a shooting range for the first time. Prosecutors argued that Fletcher killed his wife because her pregnancy would have interfered with his extramarital relationship with Susan Chrzanowski, a state district judge.

Fletcher was charged with first-degree murder, assaulting a pregnant individual and intentionally causing a miscarriage or still birth, and two felony firearm counts. The assault charge and one felony firearm count were dismissed during trial. Extensive forensic evidence and expert testimony regarding the crime scene were presented at trial by both the prosecution and defense. Fletcher was convicted of second-degree murder and on the remaining felony firearm count and received a life sentence.

More than four months after the trial, ten of the twelve jurors appeared on the ABC News show *20/20 Downtown* to talk about the case. During the telecast, the jurors described an experiment they had conducted in the jury room: one juror, holding the gun and pretending to be Leann, would fall off a table as Leann supposedly would have fallen off the bed if she had shot herself as the defense argued had occurred. The other jurors watched to see where the gun fell. Based partly on this reenactment, the jury concluded that Leann had not accidentally shot herself, thus rejecting the Fletcher theory of the cause of the shooting.

Fletcher argues that the jury's actions violated his Sixth Amendment rights to be present during critical stages of trial, to the assistance of counsel, and to confrontation. He sought habeas relief on this ground, and on the ground that the evidence was insufficient to support a finding of guilt. His petition was denied by the District Court on January 17, 2008. This appeal is based solely on his argument regarding the jury reenactment.

## II.

A.       *Standard of Review*

A district court's denial of a habeas petition is subject to de novo review. *Garcia v. Andrews*, 488 F.3d 370, 373 (6th Cir. 2007). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings" is proper only if the state court's decision:

> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

         (2)       resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Fletcher maintains that the Michigan Court of Appeals' ruling regarding the jury's reenactment is contrary to clearly established Supreme Court precedent or is an unreasonable application thereof.

A state court decision is contrary to clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams v. Taylor*, 529 U.S. 362, 405 (2000), or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 406. An unreasonable application of Supreme Court precedent occurs when a state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular state prisoner's case or when the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Id.* at 407.

The reasonableness inquiry is objective, not subjective, *id.* at 409-10, and "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly[;] [r]ather, that application must also be unreasonable." *Id.* at 411. The standard of review set forth in the AEDPA is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotations omitted).

B.      *Extraneous Influence*

"As a matter of law, clearly established Supreme Court precedent requires that a criminal defendant be afforded the right to confront the evidence and the witnesses against him, and the right to a jury that considers only the evidence presented at trial." *Doan v. Brigano*, 237 F.3d 722, 733 n.7 (6th Cir. 2001) (citing *Parker v. Gladden*, 385 U.S. 363, 364-65 (1966), and *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965)), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003). Thus, under clearly established federal law, jury exposure to extrinsic evidence or other extraneous influence violates a defendant's Sixth Amendment rights, *id.* at 736, and a state court decision that conflicts with this rule may justify habeas relief under the standard set forth in the AEDPA. *See* 28 U.S.C. § 2254(d)(1).

An extraneous influence is "one derived from specific knowledge about or a relationship with either the parties or their witnesses." *Garcia*, 488 F.3d at 376. This Court has stated that one example of extraneous influence is "conducting an out of court experiment." *Id.* However, not all jury experiments result in extraneous influence. *See United States v. Avery*, 717 F.2d 1020, 1026 (6th Cir. 1989). Where no extraneous influence is present, courts will not intrude into matters internal to jury deliberations. Substantial policy considerations support this rule.

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the

community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct.

*Tanner v. United States*, 483 U.S. 107, 120-21 (1987) (internal citations omitted). Thus, where a jury experiment is part of the "private, internal deliberations of the jury," the courts may not review it. *Doan*, 237 F.3d at 733.

C.     *Doan v. Brigano*

Fletcher's argument relies heavily on this Court's 2001 decision in *Doan v. Brigano, supra*. In *Doan*, a juror conducted an experiment at home to test the defendant's credibility. She then reported the results of her experiment to the rest of the jury. Defense counsel learned in an interview following the trial that the defendant's testimony that he had not seen bruises on the victim on the night of her death because of dim lighting prompted the juror (identified in the opinion as "Juror A") to "put lipstick on her arm to simulate a bruise, and attempt[] to view the 'bruise' in a room lit similarly to the rooms that [the victim] was in that evening." 237 F.3d at 727. This Court found that "Juror A act[ed] as a witness . . . in her statements to her fellow jurors regarding the results of her out-of-court experiment." *Id.* at 732. In emphasizing that it was "not calling Doan's verdict into question by reviewing the private, internal deliberations of the jury," the Court noted that "what makes this case different, and what triggers concerns of a constitutional dimension, is the fact that Juror A conducted an out-of-court experiment and reported her findings to the jury in the manner of an expert witness." *Id.* at 733.

No such "expert witness testimony" occurred in Fletcher's case. The reenactments were conducted in the jury room, in the presence of all the jurors. Notably, none of the cases cited in

*Doan* involved an experiment conducted by an entire jury during deliberations, as was the case here. Rather, the *Doan* Court cited cases concerned with experiments conducted outside the jury room by individual jurors who reported the results to the entire jury, as well as cases involving jury exposure to other information from outside the jury room: comments by bailiffs regarding defendants' guilt; a newspaper containing an opinion piece on the case under deliberation; and statements by a few jurors to other jurors regarding the defendant's history. *See Doan*, 237 F.3d at 731-35 (citing *Parker*, 385 U.S. 363 (bailiff's prejudicial comments); *Mattox v. United States*, 146 U.S. 140 (1892) (bailiff's prejudicial comments, newspaper article); *United States ex rel. Owen v. McMann*, 435 F.2d 813 (2d Cir. 1970) (statements by a few jurors); *Durr v. Cook*, 589 F.2d 891 (5th Cir. 1979) (one juror's experiment using a pickup truck at a Ford dealership); and *In re Beverly Hills Fire Litigation*, 695 F.2d 207 (6th Cir. 1982) (one juror's experiment using aluminum wiring in his home)).

Fletcher correctly notes that "it is the nature of the extraneous material and its likely effect on the hypothetical average jury, not the source of the information or the locus of its communication, which determines whether the defendant has been prejudiced[,] and thus whether his constitutional rights were violated." *Id.* at 734-35 (internal quotation omitted) (alteration in original). However, this distinction suggests that *Doan* is not directly applicable to the facts of this case. The holding in *Doan* was not based on a finding that jury experiments are per se unconstitutional or that they always result in the creation of extrinsic evidence, but rather on the court's conclusion that "[f]or a juror to perform and report to other jurors the results of an out-of-court experiment . . . conflicts with [the defendant's] constitutional right to a fair and impartial jury that considers only the evidence

presented at trial." *Id.* at 733. The *Doan* court's constitutional concerns were based on specific facts not present in this case.

After examining numerous cases involving jury experiments similar to the one at issue here, the district court determined that

> Petitioner's case is more like [cases in which jury experiments were not found unconstitutional] than *Doan*. The jurors in this case conducted their experiment in the jury room with all the deliberating jurors present. The jurors used a gun that was admitted in evidence, and they relied on testimony regarding the likely momentum and location of the gun if Leann had fired it. The experiment was part of the private, internal deliberations of the jury.

*Fletcher v. McKee*, Case No. 05-74659, 2008 U.S. Dist. LEXIS 3535, at *18 (E.D. Mich. Jan. 17, 2008). The district court also noted that "in his closing argument, [d]efense counsel encouraged the jurors to perform another experiment to determine the reliability of testimony regarding a different fact that was in dispute." *Id.* at *19.

The district court's decision that the reenactment of Leann's shooting "was part of the private, internal deliberations of the jury" was not improper. *Id.* at *18. The court analyzed and cited numerous cases supporting its conclusion that a jury room reenactment such as occurred in Fletcher's case does not result in the creation of extrinsic evidence. *See id.* at *13-*18 (citing *Kurina v. Thieret*, 853 F.2d 1409, 1413-14 (7th Cir. 1988); *Miller v. Harvey*, 566 F.2d 879, 880-81 (4th Cir. 1977); *Simon v. Kuhlman*, 549 F. Supp. 1202, 1205-08 (S.D.N.Y. 1982); *Bogle v. Galaza*, 38 F. App'x 437, 438 (9th Cir. 2002); *Avery*, 717 F.2d at 1025-26)). For example, in *Kurina*, the defendant complained that his Sixth Amendment right to confrontation had been violated by the jury's reenactment of the crime in the jury room using a cardboard replica of the murder weapon to

test the defense's theory that the stabbing could not have been committed by a left-handed person. 853 F.2d at 1413. The Seventh Circuit found that the experiment did not constitute extrinsic evidence and held that "[t]he jury was free to evaluate [Kurina's] defense based on the evidence introduced at trial–including the murder weapon." *Id.* at 1414. In *Bogle*, the Ninth Circuit held that "a jury is permitted to examine all pieces of evidence carefully, and to reenact the crime using the evidence before it." 38 F. App'x at 438 (citations omitted). Likewise, addressing a defendant's post-conviction allegation that the jury's reenactment of the crime using a juror's personal pocketknife constituted extrinsic evidence, the Tenth Circuit held that "[t]here is simply no constitutional command preventing a jury from using common sense and ordinary and uninflammatory props to reenact a crime in the privacy of the jury room." *United States v. Abeyta*, 27 F.3d 470, 477 (10th Cir. 1994).

In summary, there is ample support for the district court's decision that the experiment conducted by the jury in this case was a matter internal to the deliberations and that habeas relief is not justified on this ground. The jurors' re-creation of the crime scene during deliberations did not result in extrinsic evidence that subjected the jury to extraneous influence, and Fletcher's Sixth Amendment rights were not violated by the experiment. The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law.

**III.**

We **AFFIRM** the district court's judgment.